UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION


IN RE: ABBOTT LABORATORIES AND BOSTON
SCIENTIFIC CORPORATION SPINAL CORD
STIMULATOR PRODUCTS LIABILITY LITIGATION                    MDL No. 3181


TRANSFER ORDER


**Before the Panel**:[*] Plaintiffs in twelve actions move under 28 U.S.C. § 1407 to centralize this litigation involving the surgically-implanted spinal cord stimulator (SCS) devices manufactured by two competing companies in the Northern District of Illinois or, alternatively, the Western District of Missouri.  This litigation consists of ten actions naming defendants Boston Scientific Corp. and Boston Scientific Neuromodulation Corp. (together, Boston Scientific) pending in four districts, as listed on Schedule A, and four actions naming defendant Abbott Laboratories (Abbott) pending in one district, as listed on Schedule B.  Movants ask that all cases proceed before a single judge, but they do not take a position on whether they should be centralized as a single MDL or multiple MDLs before the same judge.  The parties have notified the Panel of a total of 46 related actions pending in fourteen districts.[1]


I.        Responding Parties' Positions


Plaintiffs in eight potentially-related actions—one against Abbott and seven against Nevro—suggest centralization in the Northern District of California; they ask us to expand the proposed MDL to include cases naming Nevro and rename the litigation to *In re Spinal Cord Stimulator Products Liability Litigation*.  Movants respond that they support this proposal, and support the Northern District of California as a third alternative transferee district.  Plaintiff in the *Greenberg* potential tag-along action supports centralization of the actions naming Boston Scientific, Abbott, and Nevro in the Northern District of California.  Plaintiff in the *Pospisil* potential tag-along action supports centralization of the actions naming Boston Scientific, Abbott,

---

[*]        Judge Karen K. Caldwell and Judge Madeline Cox Arleo did not participate in the decision of this matter.

[1]        Twelve of these related cases name Boston Scientific, nine name Abbott, one names both Abbott and Boston Scientific, seventeen name Nevro Corporation and Globus Medical (together, Nevro), one names both Nevro and Boston Scientific, and six name Medtronic Inc. (Medtronic). Subject to the limitations we are placing on the scope of this MDL discussed in this order, these actions and any other related actions are potential tag-along actions.  *See* Panel Rules 1.1(i), 7.1, and 7.2.

- 2 -

and Nevro in the Northern District of California, the Northern District of Illinois, or the District of Maryland.

Manufacturer defendants Boston Scientific, Abbott, Nevro, and Medtronic oppose centralization. Boston Scientific alternatively suggests centralization of only the cases against it in the Central District of California or the District of Minnesota. Nevro alternatively suggests centralization in the Northern District of California. The U.S. Food and Drug Administration (the FDA), which is named as a defendant in more than 30 actions and potential tag-along actions, takes no position on centralization and states that it is improperly named as a defendant.

## II.     Background of the Actions Before the Panel

In the actions before the Panel, plaintiffs allege that they suffered injuries arising from the implantation and use of an SCS manufactured by Boston Scientific or Abbott. They allege that the FDA granted Premarket Approval (PMA) of each manufacturer's SCS based on published literature related to similar systems manufactured by other companies. Neither manufacturer reportedly offered independent clinical data demonstrating the safety and efficacy of their devices. Plaintiffs allege that, since the original PMAs were approved, Abbott and Boston Scientific have introduced numerous new SCS devices incorporating significant modifications under supplements to their original PMAs. They allege the manufacturers have failed to comply with regulatory requirements and deprived physicians, patients, and the FDA of the complete information necessary to evaluate the true risks associated with these devices. Each plaintiff alleges he or she was implanted with an SCS and suffered injury, including unsatisfactory pain relief, shocking, burning, lead migration, autonomic dysfunction, and neurological injuries. Certain plaintiffs naming the FDA as a defendant further contend that the FDA failed to meaningfully review Boston Scientific's and Abbott's PMAs and PMA supplements. As the motion for centralization was being briefed, the Panel was notified of actions with similar allegations that name Nevro and Medtronic.

## III.     Consideration of Industry-Wide Centralization

Movants assert that there are "industry-wide" problems with spinal cord stimulators that justify an MDL including cases against, at a minimum, Boston Scientific, Abbott, and Nevro. Proponents of an industry-wide MDL have failed to meet their burden of demonstrating that creating an MDL with such a wide scope is appropriate here. While plaintiffs allege similar conduct on the part of each manufacturer, they do not allege the manufacturers acted in concert. Each manufacturer has its own line of SCS devices, each of which have their own regulatory histories. Discovery will not overlap concerning each manufacturer's conduct. While the FDA is common to many of the actions, the facts as to the approval of each manufacturer's products again will differ. In seeking an expansive MDL, movants' counsel asserted that he represents "several" patients who were implanted with multiple SCS devices marketed by different manufacturers. After the close of briefing, we were notified of one action naming both Abbott and Boston Scientific and an action naming both Boston Scientific and Nevro. We are "disinclined to take

- 3 -

into account the mere possibility of future filings in our centralization calculus." *In re Belviq (Lorcaserin HCl) Prods. Liab. Litig.*, 555 F. Supp. 3d 1369, 1370 (J.P.M.L. 2021) (quotation omitted). We are not persuaded that these two cases portend a critical mass of similar multi-defendant actions. In fact, one responding plaintiff argued that there will not be many multi-defendant actions as evidence that an industry-wide MDL will not grow too large. *See* Interested Party Paul Pospisil Resp. to the Mot. to Tr. and Consolidate, MDL No. 3181 (J.P.M.L. May 6, 2026), ECF No. 62 at p. 7 ("uses of products made by multiple defendants are extremely rare").

Movants also focus on the overlap in motion to dismiss practice, particularly regarding their Administrative Procedure Act (APA) claims, to justify an industry-wide MDL. But "[m]erely to avoid two federal courts having to decide the same issue is, by itself, usually not sufficient to justify Section 1407 centralization." *In re Medi-Cal Reimbursement Rate Reduction Litig.*, 652 F. Supp. 2d 1378, 1378 (J.P.M.L. 2009). Furthermore, the APA claim itself appears to be evolving. Since the motion for centralization was filed, plaintiffs in five actions have voluntarily dismissed their claim against the FDA, and several of the more recently-filed actions base their APA claim on a different theory—rather than challenging the FDA's approval of the PMA or PMA supplements of a given SCS device, plaintiffs instead seek "only to compel completion of a discrete, nondiscretionary administrative processing duty after receipt of mandatory safety submissions" and "[do] not request the Court to evaluate, modify, or invalidate any approval decision, scientific judgment, or enforcement determination." *See, e.g.*, *Neal, et al. v. Boston Scientific Corp., et al.*, C.A. 2:26-03543 (C.D. Cal. Apr. 2, 2026), ECF No. 1 at ¶ 48.

An industry-wide MDL is not needed in these circumstances, and creating one here may even be counterproductive. Given the differences among the actions naming each manufacturer, an industry-wide MDL "likely would complicate case management due to the need to protect trade secret and confidential information" and "may prolong pretrial proceedings, because of, *inter alia*, the possible need for separate discovery and motion tracks, as well as the need for additional bellwether trials." *In re Proton-Pump Inhibitor Prods. Liab. Litig.*, 273 F. Supp. 3d 1360, 1361–62 (J.P.M.L. 2017) (quotation omitted). We are "typically hesitant to centralize litigation against multiple, competing defendants which marketed, manufactured and sold similar products." *In re Yellow Brass Plumbing Component Prods. Liab. Litig.*, 844 F. Supp. 2d 1377, 1378, (J.P.M.L. 2012).

- 4 -

### IV.    Consideration of a Single-Manufacturer MDL[2]

Although we do not find creation of a multi-defendant MDL appropriate, on the basis of the papers filed and the hearing session held, we find that the actions naming Boston Scientific involve common questions of fact and that centralization of those actions in the Central District of California will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. Each action on Schedule A shares factual questions arising from allegations that Boston Scientific failed to comply with regulatory requirements for Class III medical devices by (1) seeking PMA approval of its SCS devices based on published literature related to SCS devices manufactured by other companies, rather than offering clinical studies demonstrating their safety and efficacy; and (2) abusing the PMA supplement process by introducing new SCS devices under successive PMA supplements with significant modifications to avoid heightened scrutiny and clinical evaluation. Plaintiffs allege that Boston Scientific's conduct deprived physicians, patients, and the FDA of the complete information necessary to evaluate the true risks associated with these devices. They allege that Boston Scientific failed to warn of and concealed the known risks of their SCS devices. All plaintiffs allege they were implanted with a Boston Scientific SCS device and were injured. Those cases brought against the FDA further allege the FDA failed to meaningfully review Boston Scientific's PMA and PMA supplements.

In opposing centralization, the manufacturer defendants argue that plaintiffs' allegations regarding the PMA and PMA supplement process are an attempt to avoid a preemption defense, which Boston Scientific contends is likely to fail, making centralization unnecessary. They further argue that most actions involving Boston Scientific already are being coordinated in the Central District of California, and those filed outside that district can be informally coordinated. Finally, they argue that each action involves unique factual issues relating to the different devices at issue and the different injuries alleged by plaintiffs.

We do not find these arguments persuasive. An assessment of the merits of plaintiffs'

---

[2]    While movants stated no preference for a single MDL or separate manufacturer-specific MDLs before the same judge, from the outset only the former was an available option for all actions because movants failed to include cases against Abbott on the motion in the statutorily-required minimum of two districts. The four cases on the motion against Abbott all are pending in the Northern District of Illinois, and therefore the Panel cannot grant a request for centralization of the cases against only Abbott. *See* 28 U.S.C. § 1407(a) ("When civil actions involving one or more common questions of fact are pending in *different districts*, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings.") (emphasis added). Our denial of centralization now does not foreclose the possibility that centralization may be appropriate at a later time. *See, e.g.*, *In re Covidien Hernia Mesh Prods. Liab. Litig. No. II*, 607 F. Supp. 3d 1356, 1357 (J.P.M.L. 2022) (granting a second motion for centralization based in part on a "significantly larger number of actions" and "the credible prospect of additional actions"). To reflect our decision to centralize only cases against Boston Scientific, we will rename this litigation *In re Boston Scientific Corporation Spinal Cord Stimulator Products Liability Litigation*.

- 5 -

preemption theory is beyond the Panel's authority. *See In re Anheuser-Busch Beer Labeling Mktg. & Sales Practices Litig.*, 949 F. Supp. 2d 1371, 1371 & n.2 (J.P.M.L. 2013) ("As the Panel held long ago … '[t]he framers of Section 1407 did not contemplate that the Panel would decide the merits of the actions before it and neither the statute nor the implementing Rules of the Panel are drafted to allow for such determinations.'") (quoting *In re Kauffman Mut. Fund Actions*, 337 F. Supp. 1337, 1339-40 (J.P.M.L. 1972)).  If Boston Scientific's prediction that these actions will be dismissed proves correct, centralization will avoid inconsistent rulings and streamline briefing, providing efficiency for the parties and the courts.  There are now 23 cases pending against Boston Scientific in nine districts.  Given the complexity of these devices and claims and the likelihood of significant overlap in motions practice, we find centralization to be the most efficient path for these cases.

Opponents of centralization argue that there is no common defect alleged, and the plaintiffs' injuries vary too much to justify centralization.  Proponents of centralization disagree and, in briefing, variously argued that plaintiffs allege that the SCS devices "failed mechanically and therapeutically" and allege common groupings of injuries.  We have "rejected the argument that products liability actions must allege identical injuries to warrant centralization." *In re Cook Med., Inc., IVC Filters Mktg., Sales Practices & Prods. Liab. Litig.*, 53 F. Supp. 3d 1379, 1381 (J.P.M.L. 2014).  Given the overlap in allegations concerning the PMA approval process, among other factual questions about the performance of these Boston Scientific products, we find there are sufficient common factual questions among the actions to warrant centralization.  Common factual questions exist regarding whether Boston Scientific failed to comply with regulatory requirements, and whether the FDA allowed it to do so.  Furthermore, each plaintiff alleges that the conduct of Boston Scientific sales representatives constituted the practice of medicine without a license.  Though these allegations will involve some individualized issues regarding what each representative said or did, plaintiffs allege that the alleged conduct occurred "routinely."[3]  We have found that "almost all injury litigation involves questions of causation that are case- and plaintiff-specific. Such differences have not been an impediment to centralization in the past." *See In re Wright Med. Tech., Inc., Conserve Hip Implant Prods. Liab. Litig.*, 844 F. Supp. 2d 1371, 1372 (J.P.M.L. 2012).

There are two potentially-related actions brought against multiple manufacturer defendants.  These actions will be handled in due course through the Panel's conditional transfer order process.  It is not unprecedented for a medical device products liability MDL to include actions that name additional manufacturer defendants. *See* MDL No. 2782 – *In re Ethicon Physiomesh Flexible Composite Hernia Mesh Products Liability Litigation*; MDL No. 2846 – *In*

---

[3]    *See, e.g.*, Am. Compl., *Grainger v. Boston Scientific Corp., et al.*, C.A. No. 2:25-06515 (C.D. Cal. Oct. 9, 2025), ECF No. 24 at ⁋ 163 (alleging Boston Scientific sales representatives routinely entered surgical suites during SCS implantation procedures, advised surgeons and operating room staff on intraoperative lead positioning and stimulation testing, participated in device programming during surgery, provided device setting recommendations to healthcare providers, and adjusted or instructed adjustment of device parameters).

- 6 -

*re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Products Liability Litigation.* If the transferee judge determines after close scrutiny that remand of any claims is appropriate, procedures are available whereby this may be accomplished with a minimum of delay. *See* Panel Rules 10.1-10.3.

We are persuaded that the Central District of California is the most appropriate transferee district for this litigation. Fourteen actions are pending in this district, and ten of them are being coordinated before Judge Josephine L. Staton, an experienced transferee judge. Boston Scientific's neuromodulation division is headquartered in this district and, therefore, relevant evidence and witnesses will be located there.

IT IS THEREFORE ORDERED that the actions listed on Schedule A and pending outside the Central District of California are transferred to the Central District of California and, with the consent of that court, assigned to the Honorable Josephine L. Staton, for coordinated or consolidated pretrial proceedings.

IT IS FURTHER ORDERED that the motion for centralization as to the actions listed on Schedule B is denied.

IT IS FURTHER ORDERED that the MDL be renamed *In re Boston Scientific Corporation Spinal Cord Stimulator Products Liability Litigation*.

PANEL ON MULTIDISTRICT LITIGATION

_____
Matthew F. Kennelly
Acting Chair

David C. Norton            Dale A. Kimball
M. Casey Rodgers

**IN RE: ABBOTT LABORATORIES AND BOSTON
SCIENTIFIC CORPORATION SPINAL CORD
STIMULATOR PRODUCTS LIABILITY LITIGATION**                MDL No. 3181

**SCHEDULE A**

Central District of California

GRAINGER. v. BOSTON SCIENTIFIC CORPORATION, ET AL.,
    C.A. No. 2:25−06515
SMITH v. BOSTON SCIENTIFIC CORPORATION, ET AL., C.A. No. 2:25−08821
WEISMAN v. BOSTON SCIENTIFIC CORPORATION, ET AL., C.A. No. 2:25−08919
WILSON v. BOSTON SCIENTIFIC CORPORATION, ET AL., C.A. No. 2:25−09958
GUTHRIE v. BOSTON SCIENTIFIC CORPORATION, ET AL., C.A. No. 2:25−11508
MARTINI v. BOSTON SCIENTIFIC CORPORATION, ET AL., C.A. No. 2:26−00825
KELLY v. BOSTON SCIENTIFIC CORPORATION, ET AL., C.A. No. 2:26−00832

Northern District of Illinois

MIYAGI v. BOSTON SCIENTIFIC CORPORATION, ET AL., C.A. No. 1:26−01902

Northern District of Mississippi

DAVIS v. BOSTON SCIENTIFIC CORPORATION, ET AL., C.A. No. 1:26−00014

Southern District of Mississippi

MORRIS v. BOSTON SCIENTIFIC CORPORATION, ET AL., C.A. No. 1:25−00364

**IN RE: ABBOTT LABORATORIES AND BOSTON
SCIENTIFIC CORPORATION SPINAL CORD
STIMULATOR PRODUCTS LIABILITY LITIGATION**          MDL No. 3181

## SCHEDULE B

<u>Northern District of Illinois</u>

FULLER v. ABBOTT LABORATORIES, ET AL., C.A. No. 1:25−12714
FERGUSON v. ABBOTT LABORATORIES, ET AL., C.A. No. 1:25−13341
TUTTLE v. ABBOTT LABORATORIES, C.A. No. 1:25−15083
REUSS v. ABBOTT LABORATORIES, ET AL., C.A. No. 1:26−01905